May it please the Court, I'm Stanton Jones from Arnold and Porter, and I represent BP. The District Court abused its discretion by denying review of the $10 million compensation award here under the Deepwater Settlement, and there are two main issues I'd like to By misclassifying claimant's vehicle expenses as entirely fixed, based on the label assigned by the claimant, despite evidence that the substantive nature of those expenses includes a variable component, as this Court recently held in two cases, Texas Gulf Seafood and Claimant ID 100185315. By focusing on the label given to an expense rather than its substantive nature, the appeal panel misapplied the settlement agreement, and the District Court erred in failing to correct this error of law. So at a bare minimum today, we believe this Court should vacate and remand for proper consideration of and classification according to the substantive nature of the vehicle expenses. And the second issue that I'll talk about today is on an even more fundamental level, the settlement program misapplied the settlement agreement here by failing to give adequate consideration to powerful evidence that this claimant is an oil and gas business excluded from the settlement class altogether, and therefore not entitled to any award at all. And including notably, Your Honors, there is here an impartial prior determination of a Federal agency, the Occupational Safety and Health Administration, or OSHA, that the claimant is a business in the oil and gas industry. Without adequately considering that evidence, the settlement program assigned a different NAICS code to this claimant, that all parties agree is not correct. And so in those circumstances, this Court should remand for proper consideration of the evidence, including OSHA's impartial determination to decide properly if claimant is an excluded oil and gas business. So on the first issue ---- Roberts, before you get to the first, on the second, because that seemed to be the baseball situation of zero regardless, so that it bleeds into the other. But therefore, you know, I do focus on these briefs very closely. And on page 2, you quote Younquist's website, that they dig deep injection wells. And then you add in the sentence, quote, which are used in the oil and gas industry, and the supporting site is Record 267. So the implication to the reader is their own website says they dig deep wells, which are used in the oil and gas. When you go to their website and when you look at the record site you gave, is there any reference to which are used in the oil and gas, or is that your supplemental point? The website does not say that they dig wells in oil and gas, but it is undisputed that this claim in Younquist does do work in the oil and gas industry substantially. When you give record sites with a sentence that has two compound points, the second point is the essential one you're giving, implying that their own website says they do oil and gas, it's difficult for me to move past that. I look at the record site and it doesn't say that. So that's your opinion, that this type of well always or frequently means oil and gas. I certainly apologize if... Does Younquist say anywhere that what they do is deep wells for oil and gas in their own materials? So in their P&Ls, in Younquist's own P&Ls, they list, quote, oil and gas revenues. That's on the record on appeal at page 5463. They did attempt during the proceedings before the claims administrator, they attempted to remove their oil and gas revenues from their financial statements, but the claims administrator nonetheless included those oil and gas revenues in the calculation of its award here. So I don't believe there is any dispute that this claimant does do work in the oil and gas industry. There are two other significant pieces of evidence that I would point the Court to today. The first one is, the first significant piece of evidence is the oil and gas revenues on Younquist's P&Ls. The second is that one of this claimant's largest clients by revenue is a company called Master Limited Partnership, focused on the exploitation, development, and production of oil and gas properties in the United States. That's at the record on appeal, page 275. And claimant has admitted in these proceedings that its work for this client, again, one of its largest clients by revenue, claimant's work for Brightburn was, quote, repair and by Brightburn. That's at the record on appeal on page 331. And those are — those are oil wells. Roberts. But when — but the appeals panel wasn't oblivious to this. They purported to look at the totality of the business interest. They said, when we've looked, we think it's class 1 and class 5 wells. Those are government wells, not class 2. So it seems like they looked at it and they made a factual determination, which could be wrong. But why isn't this a fact determination that can be argued over, but not something that we would reverse? So the appeals panel decision doesn't — doesn't acknowledge any of the specific evidence, any particular evidence on the other side. It doesn't — it doesn't — it doesn't explicitly mention or acknowledge or distinguish or argue away any of what I think are the three key pieces of evidence. And I'll get to the third one. The first was the oil and gas revenues on the claimant's P&Ls. The second is the undisputed fact that the claimant's — one of their largest clients by revenue is an oil and gas company, and they do repair and servicing of oil wells for that company. The third, and perhaps most significant piece of evidence here, is OSHA's determination. So the federal agency OSHA assigned claimant the NAICS code 213111 for drilling oil and gas wells. And OSHA did that. OSHA assigned that oil and gas NAICS code to the claimant as part of OSHA's investigation into a tragic accident where one of the claimant's employees was, quote, working from the rod basket of an oil rig, along with — This is significant. I do want to hear their answer to this. The NAICS code, which I didn't even know this classification existed, it's both to the IRS and as well as OSHA. So OSHA gave them precisely the code that would exclude them? Yes. But then in their taxes for 2010, they didn't use it? Could you clarify who used what codes? OSHA used the one that would exclude, but then what did the company do in the 2010 taxes?  So first on OSHA, OSHA assigned claimant the NAICS code. Again, it's 213111. It's for drilling oil and gas wells. It is the excluded code. OSHA, I will add, in the same inspection detail from the same accident, also listed the claimant's standard industrial classification, which is just a different type of code, as 1381, also titled drilling oil and gas wells. That was OSHA's impartial, independent designation of this claimant's business in connection with its investigation into an accident that occurred on an oil rig with claimant's employees. Claimant, in its tax return, assigned a different code, NAICS code, for some sort of specialty contractors, relatively undefined specialty contractors without a specific — there's no specific industry tied to it in the title. That's what the claimant did? That's what claimant put in its tax return. And what did the claims administrator do? The claims administrator assigned a completely different NAICS code, which neither side of this appeal, to my knowledge, is advocating. We certainly aren't, and I don't believe that the claimant will say that the claims administrator's NAICS code designation was correct. The claims administrator assigned NAICS code 237110, which is for, quote, water and sewer line and related structures contractors. And the appeal panel upheld that NAICS code designation by the claims administrator. And, Your Honors, it's wrong, and I believe all parties here agree that it's wrong. So we have a situation where there's clearly a dispute. The tax return does not match either OSHA's impartial designation or what we believe is a powerful set of additional evidence that this claimant's primary activities are in the oil and gas industry. And — Kennedy, you're making very good arguments. There may be some response to them, but there's strong evidence. What you're basically saying is that when the appeal panel, despite your best efforts — I'm sure you brought this to the attention of the appeal panel — they didn't explain how they would have come out the way that they did. It goes to Judge Barbier. He was obligated, you must be arguing to us, to deal with that, that the absence of sufficient explanation or perhaps just the absence of strong enough evidence to support that they're not oil and gas related, it's an issue that Judge Barbier had to take, Barbier had to take. And I'm not sure that fits with our general sense that if it's a fact question, by and And, excuse me, the main thing, maybe, Hector, you're arguing is the absence of any significant addressing of this or reference to your evidence by the appeal panel. So there are — there are three things — factors that I think are responsive to that question, Your Honor. First, this is a bit of an unusual case when both sides agree that the claims administrator and the appeal panel have gotten it wrong. No — to my knowledge, no one is here today advocating that the claims administrator and appeal panel's NAICS code designation is accurate. The claimant says that they are willing to accept it, but that's just because it results in them getting a $10 million award rather than being excluded from the settlement class altogether. So there is something wrong here, and it's a — it's a potentially $10 million error. Secondly, you have the — again, the impartial designation determination by an independent Federal agency as to the appropriate NAICS code designation. And the one that — again, that OSHA chose was the specific excluded oil and gas NAICS code. And thirdly, this goes to an exclusion from the settlement class, right? Expense misclassification and out-of-zone facilities, those go to the questions and errors in the calculation of the award. But this question about whether this claimant is an excluded oil and gas business as OSHA found goes to whether this claimant is even a member of the settlement class, right? If they're an excluded oil and gas business, they shouldn't be here at all. They're not entitled to any recovery whatsoever under this settlement because they aren't even in the settlement class. And I think that those — those three factors together sufficiently raise the stakes that we believe that this is a significant, a substantial and serious misapplication of the settlement agreement not to give proper consideration and to adequately address the evidence. Which, again, the settlement agreement explicitly requires consideration of this other evidence. So in Exhibit 17 — well, I'll go back. Section 2.2.4.5 of the settlement agreement expressly excludes from the settlement class businesses that are in the oil and gas industry as identified by NAICS codes in Exhibit 17. And Exhibit 17 says that the claims administrator shall determine — shall determine the appropriate NAICS code based on three things, the tax return, a business license, and, quote, any other evidence of the business's activities. Any other evidence of the business's activities necessary to determine the appropriate NAICS code. And the other evidence here is — is weighty and was worthy of careful consideration, including the OSHA designation, the undeniable oil and gas revenues listed in claimant's P&Ls, as well as the fact that, again, one of this claimant's largest clients by revenue is undisputedly an oil and gas business, and it's also undisputed that the work that the claimant does for that company is repair and servicing of that company's oil wells. I will reserve the rest of my time for rebuttal. Thank you. Let me ask, my colleagues may know, have you responded to our standing order about whether the confidentiality of this — of the pleadings and the party's name, et cetera, is anything you want to continue to claim? And we have responded, and we asserted privilege as to only a few limited matters, and I believe it was a written submittal already presented. If that's not in the record, I don't know why. What we sought to have excluded principally was the amount of the award, the economic value of it, and that's it. The amount of the award? Yes, sir. All right. Thank you. Yes. May it please the Court, Mark Comrie here for the appellant, and it just — it will not surprise the Court, I imagine, for me to tell you that I disagree substantially with some of the argument that has been advanced. And if I could just for a brief moment set a little context and then get into the substantive matter, the appellee here is family-owned business. They've grown from, you know, zero to nothing within 50 years, and they are the largest driller of Class I and Class V deep injection wells. They do not do Class II oil and gas injection wells, have not, and never intend to. Representations to the contrary advanced by BP are simply false. Is there no category for you under the NAICS code? I mean, why this odd one that — or maybe you embrace it, despite your friend's statement to the contrary. The NAICS code that has been used historically on the IRS tax filings is, in fact, not an excluded code for purposes of the BP settlement agreements. Okay? It is true that both the claims administrator and the moratoria team reviewed these matters because there was some sensitivity. In fact, we disclosed it, not wanting to go through a process that would result in us being precisely here with these arguments. And a determination was made that we are not a member of the excluded class. And, in fact, they assigned what they believed was more appropriate NAICS code, which does comport with the work that we do. But it isn't the one that you use in your tax forms. That is correct. And the point I would present there is that whether it was the one that the moratoria panel or moratoria team reviewed along with the record or the one that the claims administrator — Either one are included. Sorry? Either one of those are included. So then the question is, was OSHA wrong? And the related questions are, is that oil and gas company the largest client of yours? I was just going to — I mean, that's just where the doubt seeps in. In answer to those questions, no, Brightburn Energy Partners is not the largest client of my clients, has never been. The nature of the work that is done for that company is field maintenance. It's not drilling. It's not oil well down hole work. It is above ground equipment and maintenance repair. OSHA was on the site of the Brightburn oil — What kind of wells are you maintaining? We — for someone like Brightburn in the case — or the types of wells we build are large diameter injection wells. What kind of wells are you maintaining? Brightburn Energy, as an example, they do have oil and gas wells. I'm not suggesting the contrary. You do maintain — We do work for that company, and some of the work that we do is on equipment that they utilize in some of their well drilling operations. You don't drill the oil wells? We do not. We do not. And just while we're talking about specifics, all the work that has ever been done for Brightburn has only always been on land. I would say that as to any work that this company has ever done at any point. There's never been any offshore work of any kind. The code relevant to the exclusion that BP is arguing, it only covers drilling? It wouldn't cover maintenance of oil and gas equipment or other necessary aspects of the drilling operation? Under the settlement agreement, I believe there are categories and designations as to some that are barred as a member of a precluded class. And there are others which can be considered in review, not, in my words, a per se bar. That is my understanding of what the moratoria team is designed to do, to review the actual record that exists, to review the facts that are applicable, and then make a recommendation to the claims administrator as to whether or not this claimant is, in fact, a member of an excluded class or is engaged in work that would be preventative from asserting the claim. The award— I'll be in the briefs, but is it if you do any, you're excluded? Or if you do some small fraction, those amounts are excluded? And is that why you tried to reduce the profit and loss amount? If so, why would you then have been given reimbursement for something? Do you see where I'm— Yes, and I believe I do, Your Honor. And the award that has been issued has absolutely no monetary component that relates to any oil and gas work of any kind that's been done. There was some minor amount of work that was stripped out and that was all reported, disclosed, and looked at very carefully. We're looking at five years and thousands of pages of county records. That was never part of any calculation. The suggestion that Brightburn is our largest client, by any measure, is simply wrong. That is—and consistent with the settlement agreement, the claims administrator is tasked to find the predominant work. Just having a touch of something that may be unpalatable does not affect the entire claim. If your predominant work is not oil and gas, should the claims administrator appeal panel have at least—getting back to your conversation with Judge Higginson, are they required to strip away any calculations relevant to work that you did for an oil and gas company? I believe required in the sense that they have the discretion to do that, as I believe counsel presented to the court, that the claims administrator has the authority to look at everything that's relevant to that issue. And in fact, they did. And that is how they resulted. And in their own summary findings at or prior to the time when they published the award, they make specific notes and findings to that and specifically reference therein that there are no oil and gas components in these calculations. So I don't believe that it is—I don't see any reason why, under the settlement agreement, we're excluded. But fortunately, it's not my opinion. It's the claims administrator supported by the moratoria panel. And then the appeals panel, which reviewed the record itself in accordance with the more recent teachings of Texas Gulf Seafood. That came down in the middle of the— Yes, that's correct. But BP is in a bit of a bind, at least with the appeals panel logic, if we jump to the vehicle situation and the specific context of Texas Gulf, because they have a good faith basis to say we can't have excluded industries. There's some oddity, the codes, OSHA. Therefore, we say zero. The appeals panel then, it seems, jumping to the vehicles question, and you in your briefing say, well, sure, there must have been some variable, some fuel, some repair. But the appeals panel goes on to say, well, BP said zero, so we're going to go with the top amount. But BP was saying zero because they don't think you're a qualifying entity at all. So to give you a question on the vehicle Texas Gulf seafood situation and whether there was uncritical acceptance of the label of these as fixed costs, to the extent the appeals panel says we don't need to decide it because BP said zero, that logic doesn't work well, does it? I believe the settlement agreement contemplates precisely the rub or the tension that the baseball appeal process applies to only those scenarios where the issue and dispute is compensation. Now, in the broadest sense, being excluded is, of course, a compensation because it's zero if you're an excluded member. But I believe that process is designed more appropriately for those where you do have the issues that were also in this case, which are, is it a fixed or is it a variable cost? And was it mischaracterized or classified? Did they look at the mere labels or did they substantively review records? That certainly squarely fits in the baseball appeal process as contemplated. But, and I am not arguing that the baseball appeal process precludes the argument that BP has raised, I believe, under the principle that somehow the claims administrator or appeals panels misapplied the settlement agreement by not making us an excluded member. I think that's their, the thrust of their argument, to which the only point I hadn't responded yet was the OSHA, because I believe that the court perceived some weight to that. And I would just like to dispel that. OSHA's report is a report of an accident. They weren't there determining anything. And in fact, the accident occurred in 2017, just to show it's pretty remote in terms of the baseline periods that are involved in this claim. But nevertheless, it's, and they were making an accident report on Bright-Burns Well. Bright-Burns Well is properly classified with the excluded NAICS code, but that is not attributable to my client and the claimant in this case. It is concededly a novel argument to take an unrelated administrative department of this government and say that their casual report as to a very important fact in this case is binding in this case. But it is distinguishable, and most importantly, the settlement agreement does not empower other governmental agencies to make that determination. They empower only the claims administrator to make that decision, which is who made it in this case. The, the other, there are other cases this court has given us guidance with on the issue of NAICS codes. And in fact, opinions have determined and expressed that that is not the kind of pressing question that is usually subject to the abuse of discretion standard. That is the question before the court. And on analogous cases, none of them are concededly involving deep injection water wells, but the fact is the principle still stays the same. And on abuse of discretion, I would argue to the court that, that even if presuming you were traveling under a misapplication of the settlement agreement theory advanced by BP, what, there is no conflict between appeals panels on this issue. In fact, I would submit there's probably no other water well driller of this nature and character that's brought before the claims administrator or the appeals panel. There's no opportunity or concern that resolution of this issue will give guidance because, again, the uniqueness of it. It is, and it's, this court is being asked to, as you have said in some of the more recent cases, April 2nd cases, but one example, to review an administrative discretionary decision that applies to the unique facts of the single claimant's case, and that is not what the abuse of discretion procedure is designed to remedy. So I would submit that, aside from the factual issues that I hope I've distinguished and indicated, do not exclude my client, as found by the claims administrator and the appeal panel. But they have, BP has not established the predicate by which to even obtain the relief they're asking for. As to the other matter that was presented to argument today on the fixed versus variable expenses, if I could just briefly touch on that, the fact is fixed costs are not fixed, meaning without any kind of variation. The settlement agreement under its own exhibit 4D and the list of there contemplates that there can be crossovers. You can have costs that are both fixed and variable. In this case, fortunately, the vehicle issue, which has been presented as an example, our records that were submitted very clearly identify both vehicles and fuel in the corresponding fixed and variable categories that match with the exhibit D. Now, I concede and agree that under the Texas Gulf Seafood case, that is not the be-all, end-all of the analysis. But we have submitted more than several, about 3,000 pages worth of financial records, including baseline general journals, which have been reviewed and confirmed they've been reviewed by the language of both the appeals panel and the claims administrator prior to reaching any decision. The arguments that were advanced here today by BP were the same arguments that were advanced before the appeals panel reached its decision. And I don't really, I don't think you want me to read to you, but the fact of the matter is the appeals panel said they reviewed the record and they specifically found that those arguments were either without merit or they had not been presented sufficient evidence to find the contrary. More particularly, those arguments fall within the very clear edicts of the abusive discretion predicates that this court has established must exist. You know, the pressing issue, the conflict of appeals panels, the need to, if you resolve it, it will prevent future reoccurring issues. None of those exist in the facts that are presented here. That issue is, again, nothing more than an administrative discretionary decision, unique to the facts of this case, and to some extent, I think, resolved by the very clear language of Gulf, Texas Gulf Seafood that has come out between when we briefed it and when we were arguing. So, Your Honor, we stand on our briefs. I think both sides have presented good arguments and facts. We've also both submitted letter rulings for authority to the court to represent the subsequent opinions that are coming out, and I'm happy to entertain any other questions or I'll stand. Thank you. Thank you, Your Honors. One quick factual point. The Brightburn Oil and Gas Company, and I'll start on the oil and gas exclusion issue. Brightburn, the record shows, is one of the claimant's largest clients by revenue. We didn't say in our briefs, and I certainly didn't intend to indicate that it is the single largest customer, but it is one of the claimant's largest clients by revenue. I don't have the specific percentage on hand. With respect— Ballpark. I don't, unfortunately, know a percentage, even a ballpark. What we said in our briefs and with citations to the record is that Brightburn is one of the claimant's largest clients by revenue. On the OSHA report, which I think is really critical here, my opposing counsel referred to it as a casual report, suggesting that maybe OSHA wasn't really paying close attention. I respectfully disagree. OSHA was investigating the death of one of the claimant's employees in the rod basket on an oil rig. The conclusion of the OSHA report says employee number one's body hit the side of the rod There was nothing casual about the work that OSHA did investigating this. And the fact that OSHA assigned the specific excluded oil and gas NAICS code as well as the oil and gas standard industrial classification in connection with an investigation of this magnitude into a person's death warrants careful attention in the analysis. It doesn't sound like they're disputing that that company would get that code. That is what they do. So if OSHA's going to their work site, why wouldn't that code know? OSHA's assignment of the NAICS code was to Youngquist Brothers. It's on page 277 of the record. It was an investigation into an accident that occurred at a Brightburn site, but it was Youngquist's employee who died, the claimant's employee who died. It was an investigation into that death of claimant's employee, and the NAICS code assignment very clearly and undisputedly was OSHA assigning that oil and gas NAICS code to this claimant, not to Brightburn. And when he points, he says it was 2017. Would that be relevant or not? It was in 2007, not in 2017. Well, I misheard then. And I don't think that it's relevant. I haven't ever heard or seen anything to indicate that there was any material change in the nature of the claimant's business with respect to oil or gas or otherwise between 2007, frankly, and today. The claimant focuses narrowly on the fact that they don't drill the oil wells. But the excluded oil and gas businesses under the settlement agreement are explicitly not limited to those who actually drill. And if you look at page 5898 of the Record on Appeal, this is section 2.2.4.5 of the settlement agreement, it identifies the oil and gas industry exclusion. And in addition to those who drill wells, it also excludes those who are involved in preparing or maintaining well sites or other extraction sites, as well as those involved in maintaining pipeline or distribution facilities. The exclusion is broader than just those who drill. Maybe in your brief. Does Judge Barbier address this exclusion in a published district court opinion that's informative or not? I don't believe so. The NAICS code that the claims administrator and the appeal panel applied, it goes to companies that are involved in, quote, the construction of water and sewer lines, mains, pumping stations, treatment plants, and storage tanks. I'm not — I wasn't totally sure whether — what the claimant's position was on that. But my understanding is that that is not what this company does at all. It's not what they put on their tax returns. They're willing to accept it because it means they get money. But I don't hear them to be saying it's right. Very briefly on the expense misclassification issue, before my time runs out. The classification of claimant's vehicle expenses as 100 percent fixed, I believe, is clearly wrong, substantively wrong, under Texas Gulf Seafood and this Court's subsequent decision applying Texas Gulf. So we believe that, at a minimum, a vacatur and remand for that. And on the baseball process, I believe Judge Higginson's questions had it just right. BP's $0 baseball offer here was obviously because BP was pressing a — whether it's meritorious or not, and we believe that it is, but at a minimum, it was a good-faith, plausible, legitimate argument that this is an excluded claimant entitled to zero. And that baseball offer should not foreclose, and this Court should not construe the settlement agreements to require that BP basically waive all other arguments simply in order to argue that the claimant is excluded altogether. Is there no opportunity — it does seem to me the baseball process makes sense. Is there no opportunity to stand by your legal argument and say zero as your final offer, but if you reject our position that they are excluded, this is what we think is the most they should be entitled to? Is there no opportunity to make that kind of final offer? To the — I mean, final suggestion to the appeal panel as to what should be done? It's an interesting suggestion. I don't know myself. We see the zero offers with some frequency, or zero suggested outcome quite often in the appeals that we see here. And it does — and they almost are never successful when they get here, at least, that we don't overturn it and say zero was the right amount. And it does seem to me consistent with what you are indicating here. It is — does put you in something of a box. If you do think you have a pretty good argument for zero, but you don't want the baseball to hit you upside the head, if we don't accept that. So you're not aware of any way to get around that. Standing here today, I don't know whether that would work. It's an interesting suggestion. Even if it was possible, I could see legitimate strategic reasons why, particularly in a case like this where we believe that the evidence supporting exclusion is so strong that BP shouldn't be forced to — even in an alternative argument with a — some multimillion-dollar offer, BP shouldn't be forced to accept the possibility at the appeal panel stage that the claimant is entitled to some multimillion-dollar award when BP has this very strong argument that they're excluded. So even if that sort of, you know, if excluded, then zero, alternatively some multimillion-dollar award were feasible, and I don't know that it is, in circumstances like the ones here when BP makes a zero-dollar award, clearly based on a strong argument — we believe meritorious, but at a minimum, a strong good-faith argument that the claimant is totally excluded as a class member, that zero-dollar offer — What if the settlement says if you get 10 percent, 20 percent, 1 percent from the oil and gas business, you're excluded? No. What the settlement agreement says — the settlement agreement directs the claims administrator and appeal panel to assign the appropriate NAICS code and then the claims administrator's policy 480 says that the claims administrator will choose the NAICS code that, quote, most accurately describes the company's primary — Now you can't tell us what percentage of the claimant's revenue comes from oil and gas-related activities. I cannot. What do you want us to do with that? I don't believe that that inquiry was undertaken at the claims administrator level because the claims administrator assigned this other NAICS code that is simply wrong. Unless you tell them, you know, we think it's 70 percent, 10 percent, 50 percent, how are they supposed to make that analysis? So BP is not — You're not telling us that if we send it back, it'll come out differently, is my point. I believe it will come out differently. Tell me why. Because if it's only 10 percent of their business, why will it come out differently? Because I believe that there's good reason to think that OSHA was correct when OSHA issued it. Well, you haven't given us the evidence to make — other than — you just haven't given us the evidence on how much of their revenue is from oil and gas properties. So the proceedings before the — And you didn't tell the appeals panel. I don't believe we have that information from the claims administrator proceedings where BP is not present. So I'm not sure that the record as it stands today is sufficient to know a specific percentage. Certainly, that work was not done at the claims administrator level, again, because the claims administrator assigned this other NAICS code for water and sewer lines. It's just totally wrong. We've got your order. Okay. Thank you, Your Honors. Thank you.